**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**TRACY LEE FREDERICKSON,**

> **Plaintiff,**

v.                                                    **CASE NO. 2:13-cv-33244**

**CAROLYN W. COLVIN**
**Acting Commissioner of Social Security,**

> **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11), Brief in Support of Defendant's Decision (ECF No. 14) and Plaintiff's Reply to Defendant's Brief in Support of Defendant's Motion for Summary Judgment (ECF No. 15).

<u>Background</u>

Tracey Lee Frederickson (hereinafter Claimant) protectively filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on or about September 7, 2010 (Tr. at 190 and 197).   Her alleged disability onset date is January 27, 2008[1] (Tr. at 18).   The claims were denied initially on December 20, 2010, and upon reconsideration on March 16, 2011.   Claimant filed a written request for hearing on May 16, 2011 (Tr. at 139-140).   In her request for a hearing before an Administrative Law Judge (ALJ), Claimant stated she disagreed with the determination of her claim because the decision was

---

[1]  Claimant's applications provided November 1, 2006, as the disability onset date (Tr. at 190 and 197).   At the hearing held on June 26, 2012, Claimant requested to amend the onset date of disability to January 27, 2008, due to working at the substantial gainful activity level after the original alleged onset date through the amended onset date. The Administrative Law Judge granted Claimant's request to amend the onset date (Tr. at 18).

contrary to the medical evidence and regulations (Tr. at 139).  An administrative hearing was conducted on June 26, 2012 (Tr. at 38-79).  In the Decision dated June 29, 2012, the ALJ determined that Claimant was not disabled (Tr. at 15-37).  On August 16, 2012, Claimant requested a review by the Appeals Council (Tr. at 12).  On November 4, 2013, the Appeals Council received additional evidence from Claimant which it made part of the record (Tr. at 6).  Claimant's request for consideration by the Appeals Council, dated November 28, 2012, was admitted as Exhibit 17E.  On November 4, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision" (Tr. at 1).  The Appeals Council stated that the additional evidence was considered but did not provide a basis for changing the Administrative Law Judge's decision.

On December 26, 2013, Claimant brought the present action requesting the decision of the Commissioner be reversed, remanded or modified.  In Claimant's Brief in Support of Judgment on the Pleadings, Claimant requested that the ALJ's decision "be remanded as it is not supported by substantial evidence" (ECF No. 11).

Under 42 U.S.C. §§ 423(d)(5) and 382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months. . .."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful

employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date (Tr. at 20). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, lumbar strain, lumbago, disc bulge at L4-5, learning disorder NOS versus borderline intellectual functioning, obesity, depressive disorder NOS and adjustment disorder with anxiety and depression (Tr. at 21). At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.

(*Id.*)   The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations[2] (Tr. at 23).  As a result, Claimant cannot return to her past relevant work (Tr. at 30).  Nevertheless, the ALJ concluded that Claimant could perform jobs such as document preparer and food sorter (Tr. at 32).  On this basis, benefits were denied (Tr. at 32).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

---

[2]  Claimant is able to lift up to twenty pounds occasionally and ten pounds frequently in light work as defined by the regulations.  She may stand and walk a combined total of four hours in an eight-hour day, and she may sit four hours in an eight-hour day.  She must be allowed to sit or stand at 30 to 45 minute intervals, and can do so without being off task more than 5% to 10% of the work period.  She may occasionally climb ramps and stairs, stoop, kneel, crouch and crawl but may never climb ladders, ropes and scaffolds.  She must avoid concentrated exposure to extreme cold, vibrations, and hazards such as moving machinery and unsecured heights.  She is fully capable of learning, remembering and performing simple, routine and repetitive one and two-step work tasks involving simple work instructions.  These work tasks should require no significant reading ability above the elementary school level (Tr. at 23).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was born on August 28, 1976. Claimant was placed in special education classes in high school and graduated high school in 1995.  Claimant attempted suicide around the age of 13.  Claimant's psychological evaluations report that she attempted suicide on two occasions, once by attempting to cut her wrist, another time by taking aspirin (Tr. at 305, 543).  Claimant was 13 years old at the time.  Following the suicide attempts, Claimant was psychologically hospitalized for 2 weeks (Tr. at 305).   Claimant alleges she became unable to work as of January 27, 2009, secondary to bulging discs at the L4 and L5 levels and a learning disability (Tr. at 233).  Claimant asserts that she has been diagnosed with depression, anxiety and borderline intellectual functioning (ECF No. 11).

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the ALJ failed to comply with 20 C.F.R. § 404.1527 by assigning "no weight" to the report of an examining psychologist. Claimant further asserts that the ALJ improperly gave "some weight" to the opinions of non-examining State agency psychological consultants.  Claimant asserts that the ALJ's decision is not supported by substantial evidence.  Defendant asserts that the ALJ appropriately assigned weight to the medical opinions, therefore, the decision is supported by substantial evidence.

<u>The Medical Record</u>

At age 13, in 1990, Claimant was administered the Wechsler Intelligence Scale for Children – Revised, which yielded the following results: Verbal IQ 74, Performance IQ 84 and Full Scale IQ 77 (Tr. at 286).  In 1994, at age 18, the Fulton City School District in Fulton, New

York, recommended that Claimant be placed in special education classes (Tr. at 287).   The School District made the recommendation because Claimant had "been identified as having an educational disability requiring special educational services" (Tr. at 288).   Claimant graduated from high school in 1995 with an individualized education plan (IEP).

On April 21, 2000, Raye Lynne Dippel, Ph.D., Clinical Psychologist, performed a psychological evaluation of Claimant.   Dr. Dippel reviewed Claimant's school records and conducted a clinical interview of Claimant.   Dr. Dippel reported that Claimant received "Special Education services since first grade.   Learning to read seemed impossible, although [Claimant] did learn the alphabet" (Tr. at 305).    Dr. Dippel administered the Wechler's Intelligence Scale for Adult- Revised and Wide Range Achievement Test- Revised (Tr. at 305-307).   Plaintiff scored a Verbal IQ of 75, Performance IQ of 75 and a Full Scale IQ of 70 (Tr. at 306).   Dr. Dippel reported that Claimant was functioning within the borderline range of intellectual ability. Dr. Dippel reported the following:

> [Claimant] may need counseling to address her sadness regarding her learning disabilities.  [Claimant] has developed good social skills and has a good work ethic.
> …
> [Claimant] will do well in employment that takes advantage of her good social skills.  By example in the past, [Claimant] enjoyed working in childcare.  She would do well as a greeter.  Her ability to attend to small details of visual information would lead her to being skillful in inspecting manufactured materials for quality control.
> …
> [Claimant] will learn best by doing.

Dr. Dippel reported that "There are significant differences between [Claimant's] IQ and her academic achievement scores, which means that she has learning disabilities in reading, spelling and arithmetic. Another word that might describe Tracy's disability is dyslexia."  (*Id.*) Dr. Dippel stated that "Results of achievement testing, indicated that [Claimant] is functioning at

third grade level or below in Reading, Spelling and Arithmetic" (Tr. at 306). Dr. Dippel reported that Claimant had "a good work ethic" (Tr. at 307).

On October 3, 2008, Rosemary L. Smith, Psy.D., completed a psychiatric review technique form that stated a residual functional capacity (RFC) assessment was necessary to determine medical disposition (Tr. at 326). Dr. Smith reported that the medically determinable impairment of borderline intellectual functioning was present but did "not precisely satisfy the diagnostic criteria" (Tr. at 327). Dr. Smith reported Claimant's degree of functional limitation to be mild in activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace (Tr. at 336). Dr. Smith reported that Claimant did not experience any episodes of decompensation. (*Id.*) Dr. Smith commented that although Claimant stated her "concentration depends on the activity," Claimant reported she is unlimited in her ability to pay attention (Tr. at 338). Dr. Smith commented that Claimant "did not allege a mental impairment." (*Id.*)

Also on October 3, 2008, Dr. Smith performed a mental residual functional capacity assessment on Claimant (Tr. at 340-343). Dr. Smith concluded that Claimant was not significantly limited in the following: ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out very short and simple instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take appropriate precautions; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others (Tr. at 340-341).

Dr. Smith found Claimant to be moderately limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions (Tr. at 340). In summary, Dr. Smith reported that Claimant retains the ability to learn and perform simple, unskilled work-like activities (Tr. at 342).

Jeff Harlow, Ph.D., performed a case analysis for Disability Determination Services on October 25, 2010, approximately a month and a half after Claimant filed disability applications (Tr. at 382). Dr. Harlow briefly reported that "Given the valid IQ score of 77 when the claimant was 13, and the adult WAIS-3 Fs=70, there is no need for more IQ testing."

The mental status examination (MSE) conducted on November 15, 2010, included a review of the psychological evaluation performed by Dr. Dippel on April 21, 2000 (Tr. at 387). The MSE described Claimant to be a 34 year old woman with a high school education (Tr. at 386). She graduated high school in 1995, while receiving special education services for a learning disability. She completed a culinary arts training at Voc-Tech while in high school (Tr. at 388). The examination reported that Claimant previously worked part-time as a day care

worker (Tr. at 386).  Claimant presented a valid driver's license at the examination.  Her chief complaints during her MSE were "Bulging L4-L5 discs in the spine [and] learning disability." (*Id.*)  Dr. Dippel reported that Claimant did not use any adaptive or assistive devices. She walked with a normal gait and maintained a normal posture.

The MSE involved the review of records including Claimant's WAIS-R scores of 75 in Verbal IQ, 75 in Performance IQ and 70 in Full Scale IQ (Tr. at 387).  The MSE reported that Claimant had been taking Cymbalta for approximately two months and that "No further treatment was reported" (Tr. at 388).  Claimant's daily activities included working from 1:00 p.m. to 6:00 p.m., preparing meals, watching tv, driving daily, shopping every two weeks and washing laundry daily (Tr. at 389). Claimant self-reported that she hangs out with friends weekly.  (*Id.*)  Claimant self-reported that her medication is effective in controlling her symptoms.  (*Id.*)

On December 3, 2010, Jeff Boggess, Ph.D., performed a Psychiatric Review of Claimant (Tr. at 399-411).  Dr. Boggess reported that a RFC Assessment was necessary to determine Claimant's medical disposition(s) (Tr. at 399).  Dr. Boggess reported that a Listing 12.04 Affective Disorder is present "that does not precisely satisfy the diagnostic criteria" (Tr. at 402). Dr. Boggess rated Claimant's degree of limitation in activities of daily living to be mild (Tr. at 409).  Dr. Boggess reported that Claimant did not possess any degree of limitation in maintaining social functioning or episodes of decompensation, each of extended duration.  (*Id.*)  Dr. Boggess did not rate Plaintiff's degree of limitations in maintaining concentration, persistence or pace. Dr. Boggess' Psychiatric Review reported that evidence did not "establish the presence of the 'C' criteria[3] required to establish a Listing 12.04 Affective Disorder" (Tr. at 410).

---

[3]  Listing 12.04 paragraph C criteria includes the following:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has

On March 10, 2011, John Todd, Ph.D., reviewed Dr. Boggess' psychiatric review and Claimant's medical record.  Dr. Todd affirmed Dr. Boggess' opinion of December 3, 2010.

On June 14, 2012, Tony Goudy, Ph.D., conducted a psychological evaluation of Claimant "to determine if psychological factors could be adversely affecting her ability to pursue substantial gainful activity" (Tr. at 542-550).  Dr. Goudy performed the following tests and procedures:  clinical interview, mental status examination, Beck Depression Inventory –II (BDI-II) and Repeatable Battery for the Assessment of Neuropsychological Status (RBANS) (Tr. at 542).  Dr. Goudy reviewed the psychological evaluations of April 2000, and of November 2010, conducted by Dr. Dippel (Tr. at 543).  Claimant reported to Dr. Goudy that she was last employed working at a day care for almost a year, ending in January 2011 (Tr. at 544).  Claimant reported to being fired because her "back went out." (*Id.*)  Claimant reported that her longest job involved housekeeping at a local hospital which she stated "was hard because I can't read." (*Id.*)  Claimant stated that she "had to memorize all the paperwork."

During the assessment, Claimant "acknowledged receiving individual therapy at the age of 13 and again several years ago." (*Id.*)  Claimant reported to Dr. Goudy that she cannot read and write (Tr. at 542).  Claimant reported depressive symptoms such as no longer deriving pleasure from most of the things she used to enjoy. (*Id.*)   Additionally, she reported chronic low energy, feelings of guilt and worthlessness and great difficulty concentrating.   Dr. Goudy reviewed Claimant's April 2000 evaluation by Dr. Dippel.  Dr. Goudy reported Claimant's IQ scores to lie in the borderline range (Tr. at 543).  Dr. Goudy did not administer another WAIS-R

caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication of psychosocial support, and one of the following:
1.   Repeated episodes of decompensation, each of extended duration; or
2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

test.

Although Claimant has a history of suicidal ideation and one suicide attempt, on inquiry by Dr. Goudy, she denied having any intent to harm herself (Tr. at 545).  Dr. Goudy reported that Claimant had no difficulty instantly repeating back four of four objects, indicating that her immediate memory was intact.  However, she could only remember one of the four objects after a 20-minute delay, indicating a moderate to marked impairment in recent memory.  Dr. Goudy reported that Claimant "was well-oriented to time, place, person and circumstance today."  (*Id.*) Claimant denied any history of perceptual disturbances.  Dr. Goudy found that Claimant's judgment was "intact relative to her limited intellect."  Her intellectual functioning was reported in the borderline range.  (*Id.*)

Dr. Goudy conducted psychological evaluations by administering the tests orally.  He administered a BDI-II test, "a 21-item instrument designed to assess the degree of depressive symptomology among adolescents and adults."  Dr. Goudy stated that Claimant's score is indicative of severe levels of depression.  Additionally, Dr. Goudy administered brief, individual tests measuring attention, language, visuospatial/instructional abilities and immediate and delayed memory, known as the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS) (Tr. at 545-546).  Dr. Goudy stated that Claimant "appeared to put forth an adequate effort, and consequently the current results are believed to be a valid assessment of her current functioning" (Tr. at 546).  Claimant was markedly impaired in all areas of the test.  Dr. Goudy diagnosed Claimant with the following: depressive disorder NOS; reading disorder; mathematics disorder; borderline intellectual functioning, by history; and with a current GAF of 55.  (*Id.*)

Dr. Goudy's summary and recommendations stated that Claimant suffers from depression and a long history of learning difficulties.  He reported that considering Claimant's RBANS result, as well as the WAIS-R IQ test in the record, Claimant has marked impairment in recent memory and concentration.  (*Id.*)  Dr. Goudy recommended that Claimant be assessed under Listing 12.04 Affective Disorders.

Dr. Goudy completed a Mental Assessment which was attached to his psychological evaluation, dated June 18, 2012 (Tr. at 548-550).  Dr. Goudy reported that Claimant would be markedly impaired in making occupational adjustments to function independently and maintain attention/concentration (Tr. at 549).  He reported that Claimant would also be markedly impaired in making performance adjustments to understand, remember and carry out detailed or simple job instructions. (*Id.*)  Dr. Goudy reported that Claimant would be markedly impaired in making personal social adjustments to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. at 550).  Dr. Goudy reported that Claimant is not capable of managing her benefits in her own best interest.  (*Id.*)

Dr. Goudy opined that although Claimant's impairment did not meet Listing 12.04, Affective Disorders, she suffers from the following functional limitations contained in Listing 12.04:  moderate impairment in activities of daily living; mild impairment in social functioning; marked impairment in concentration, persistence and pace; and no episodes of extended duration in decompensation (Tr. at 547). Dr. Goudy reported that "it does not appear that [Claimant] meets a listing based solely on psychological factors.  However, further limitations are detailed in the RFC attached [to] this document."  (*Id.*)

<u>Evaluating a claimant's mental impairments</u>

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2013).  First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1).  Second, if the ALJ determines that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s).  §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e).  Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s).  §§ 404.1520a(b)(2) and 416.920a(b)(2). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3).  The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme.  The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4).  A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise.  §§ 404.1520a(d)(1) and 416.920a(d)(1).  Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2).  Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity.  §§ 404.1520a(d)(3) and 416.920a(d)(3).   The ALJ incorporates the findings derived from the analysis:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in

reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2).

In his decision, the ALJ evaluated Claimant's mental impairments using the special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2013).  The ALJ found that Claimant suffered from severe impairments including learning disorder NOS versus borderline intellectual functioning, depressive disorder NOS and adjustment disorder with anxiety and depression (Tr. at 21).  When the ALJ rated Claimant's degree of functional limitation resulting from the impairments, the ALJ found that Claimant was mildly restricted in activities of daily living and social functioning.  The ALJ found that Claimant has moderate difficulties in concentration, persistence or pace (Tr. at 22).  The ALJ's decision reflected that Claimant had not experienced any episodes of decompensation.

<u>Weight Afforded Examining Physician Opinion</u>

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2013).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence."  *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2005). Under § 404.1527(d)(2)(ii) and § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and

(5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2) and 416.927(d)(2).

Under § 404.1527(d)(1) and § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner.  Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources).  The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record."  *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

In his decision, the ALJ summarized the psychological examination by Dr. Dippel, performed in 2000 (Tr. at 26).  Dr. Dippel noted that Claimant read, spelled and did arithmetic at the third grade level.  In the examination, Claimant's WAIS-R scores revealed a verbal IQ of 75 and performance IQ of 75, with a full scale IQ of 70.  Dr. Dippel noted that "claimant experienced significant 'sadness' with regard to the learning disability" (Tr. at 26).  Although, the ALJ stated that Claimant's IQ scores from this examination showed that Claimant functioned

in the borderline range of intellectual functioning and the record clearly documents a learning disability, he noted that "the learning disability has not prevented the claimant from working." (*Id.*)

Additionally, the ALJ summarized a consultative mental status examination conducted in November 2010 (Tr. at 386-389). The examiner reviewed Claimant's WAIS-R scores from Dr. Dippel's examination in 2000 (Tr. at 387). Another WAIS-R examination was not conducted. The ALJ noted that during the consultative examination, Claimant reported that "her mental health problems began to interfere with her ability to work at age 18" (Tr. at 26). In summarizing the MSE, the ALJ stated "The claimant reported receiving special education classes but acknowledged completing culinary arts training at the Vo-Tech center while in high school" (*Id.*)

The ALJ discussed the psychological assessment obtained by Claimant from Dr. Goudy in June 2012. The ALJ gave Dr. Goudy's opinion "no weight." The ALJ stated that Claimant underwent the examination by Dr. Goudy in "an attempt to generate evidence for the current appeal," rather than in an attempt to seek treatment (Tr. at 27). The ALJ opined that neither the record nor Claimant's testimony demonstrated mental health treatment. The ALJ criticized Dr. Goudy's opinion for containing "check boxes." The ALJ stated that Dr. Goudy's opinion "failed to provide a narrative outlining the functional capacity as required by Social Security Ruling 96-8p." (*Id.*)

The ALJ summarized the evidence of record and stated that "the claimant obtained her driver's license on the first attempt, graduated from high school and successfully completed vocational training in culinary arts, which requires reading recipes" (Tr. at 29). Although not mentioned in the ALJ's summary, the Claimant was able to do these things with modifications

16

for her alleged mental impairments.  A closer look reveals that Claimant obtained her driver's license by having exam portion read to her (Tr. at 77).  Claimant graduated after placement into special education curriculum in high school. Additionally, Claimant testified that she did not bake or make anything in the culinary arts vocational training (Tr. at 78). When the ALJ asked Claimant at the hearing "How did you do culinary arts training without being able to read recipes?" (Tr. at 77.)  Claimant responded "I did the dishwasher.  That's all I did."

Dr. Boggess found that Claimant was capable of performing routine, one to two step work activity (Tr. at 30).  The ALJ gave "some weight" to the opinion of consulting physician Jeff Boggess.  However, the ALJ added that Claimant "would be unable to read job instructions." (*Id.*)  The ALJ gave "some weight" to the opinions of reviewing physicians Dr. Boggess and Dr. Todd.

The ALJ gave Dr. Smith's opinion "some weight".  Dr. Smith provided a psychiatric review of Claimant and opined that Claimant had no more than mild limitations in daily activities, social function and concentration, persistence and pace.  The ALJ held that Claimant is "slightly more limited in that she cannot read instruction."  (*Id.*)

Discussion

The ALJ's decision mentioned that Claimant asserted in her Social Security Administration function report that she attended special education classes (Tr. at 24).  The ALJ did not discuss the Individualized Education Program (IEP) recommended by the Fulton City School District Committee in 1995 (Tr. at 285-288).  The minutes of the committee reflect that a meeting was held on May 23, 1995 (Tr. at 288).  The committee was comprised of the following: psychologist, Claimant's teacher, parent member, physician, S/L teacher, parent/guardian, special education teach and case manager.  (*Id.*)  The committee's decision was based upon

17

Claimant's psychological evaluation in October 1990, physical examination, observation report, social history and education evaluation in September of 1994.  The IEP found that Claimant suffered from a learning disability (Tr. at 285).  At the time of implementation of the IEP, Claimant was a graduation senior.  (*Id.*)  Claimant's IEP modifications included extended time limits, questions being read to her, answers recorded, a calculator and special location.

The IEP included scores from a WISC-R taken by Claimant on February 1, 1990 (Tr. at 286).  Claimant's received a verbal IQ score of 74, performance IQ score of 84 and a full scale IQ of 77.  Claimant's learning rate was reported as below average.  On September 27, 1994, Claimant took Woodcock-Johnson tests in reading, mathematics and written language.  Claimant's reading score was at level 1.5 in general education.  Her math score indicated that her general education level in mathematics was 3.2. Claimant's written language general education level was 1.7.  Therefore, the testing reflected that Claimant could read and write at a first grade level and could do mathematics at a 3rd grade level.  (*Id.*)

Because the ALJ found that Claimant's mental impairments are severe but not in accordance with the criteria in the Listings, the ALJ then assessed Claimant's residual functional capacity.  §§ 404.1520a(d)(3) and 416.920a(d)(3).  The ALJ did not discuss the Claimant's IEP reflecting Claimant's learning disability.  The IEP is dated prior to Claimant being 22 years of age and prior to Claimant filing disability applications. The ALJ stated that Claimant was evaluated by Dr. Goudy to generate more evidence in this matter. Claimant's IEP demonstrates that her learning disability existed prior to her filing disability applications and was not produced for the sake of filing for disability.  Additionally, in his assessment of Claimant's RFC, the ALJ gave no weight to the opinion of Dr. Goudy.  The ALJ held that "Dr. Goudy's opinion contains only 'check boxes' and failed to provide a narrative

outlining the functional capacity as required by Social Security Ruling 96-8p" (Tr. at 27).

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. *See* SSR 96-8p, SSR 96-2p and SSR 96-5p.

In the present case, the position that Dr. Goudy's opinion failed to meet the requirements of Social Security Ruling 96-8p by not providing a narrative in his assessment of Claimant is misplaced.  SSR 96-8p requires a narrative discussion by the adjudicator in the RFC assessment. Additionally, Dr. Goudy's opinion is not inconsistent with the IEP, therefore the ALJ must review Claimant's IEP and consider whether it, in conjunction with the examining physician's opinion, warrants a change in the controlling weight of the medical opinion on record.

The court proposes that the presiding District Judge find that the ALJ's decision does not contain sufficient explanation, in keeping with the applicable regulations cited above and related to the evaluation of medical evidence, to make a determination about whether the decision is supported by substantial evidence.  This court has previously held that when an ALJ provides limited reasons for rejecting the opinions of each treating and examining sources with "no real in depth analysis or sufficient explanation from which the court can make a recommendation about whether the determination that Claimant does not suffer a severe mental impairment is supported

by substantial evidence," the decision should be remanded to determine whether the decision is supported by substantial evidence. *Anthony H. Cruz v. Michael J. Astrue*, Case No. 2:06-cv-00235 (Southern District of West Virginia July 16, 2007).

In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). The court finds that that Claimant's IEP dated in 1995, constitutes probative evidence that must be considered, especially in light of reconsideration of weight given to medical opinions. Therefore, without an explanation from the ALJ as to Claimant's education records pertaining to her IEP, the court cannot recommend that the ALJ's decision is supported by substantial evidence. What is absent from the ALJ's decision, and what prevents this court from making a recommendation to the District Court that the decision is supported by substantial evidence, is a discussion of Claimant's IEP and IQ scores reflected herein as they relate to the weight given to the examining and reviewing physicians' opinions.

Conclusion

Based on the above, the court proposes that the District Court find that it is unable to conclude whether the Commissioner's decision is supported by substantial evidence because the ALJ failed to discuss the totality of the record.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the District Court GRANT the Plaintiff's Motion for Judgment on the Pleadings to the extent she seeks remand, and otherwise DENY Plaintiff's Motion for Judgment on the Pleadings, DENY the Defendant's Brief in Support of Defendant's Motion for Summary Judgment, REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to

the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED and a copy will be submitted to the Honorable Judge Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   January 27, 2015

Dwane L. Tinsley
United States Magistrate Judge